We'll hear the next case for argument, which is Smith v. Curry. Good morning, Your Honors. David Andrew Eldridge, Deputy Attorney General for Pellant and Cross Appellee. The first thing I would like to say is to apologize. There were formatting problems in the briefing, and we strive very much to not only get the substance right but also the formatting, and this didn't meet our standards. So I apologize greatly for that. The only explanation I can give is that we had a great deal of retirements and manpower problems. I didn't hear you. I'm sorry. I didn't hear what you said. We had some manpower problems given the retirements, and that is why the formatting was off. And so I apologize for that greatly. Okay. As for the substance, we filed extensive objections below to the findings and recommendations, and I believe the briefs are exhaustive on both the issue raised in the appeal and in the cross appeal. And so I am generally prepared simply to answer questions. But in my view, otherwise, the questions presented are well briefed. So in the absence of questions, I would submit, but I'm happy to answer any questions. That's a strange way to make an argument when the petition was granted below. You don't want to make any argument? What do you think the district court was wrong about? I believe, well, they are clearly wrong in that there is no Supreme Court authority clearly establishing what will amount to coercion. The only authority is that when determining what amounts to coercion, you must consider all the evidence and all the circumstances. Well, the court of appeal clearly did that in this case. Unfortunately, the findings and recommendations omit them. I have one very specific question. It seems to me that when the judge recited the evidence with regard to the what was said in the suspect's statements when they were arrested, he left something very important out, which was he recited Hickson's statement quite specifically. But with regard to Smith's statement, he didn't say that Smith said that Hickson had taken the victim into another room. Am I wrong about that? In other words, he didn't recite Smith's statement in full. He recited Hickson's statement in full. So it ended up, Hickson's statement ended up implicating Smith, but Smith's statement didn't end up implicating Hickson as he recited them, although there were, in fact, Smith's statement did implicate Hickson. As I recall, it's Hynex. I'm sorry? I think it's Hynex is the name of the co-defendant. What is his name? H-I-N-E-X, Hynex. Hynex. Okay. Whatever his name is. Hynex, I would have said, something like that. Well, whatever his name is. It seems to me to be incomplete in a way prejudicial to Smith. Well, the jury had the entire evidence before it already. That isn't the question. The question is that he was summarizing the evidence and he was doing it, I believe, in an asymmetrical way. It may well be asymmetrical, but there is absolutely no Supreme Court authority saying that, A, a judge cannot focus on certain evidence and that if he does summarize it, he must summarize the entire body of evidence. He doesn't have to do it accurately? There is no Supreme Court. Inaccurately? There is no Supreme Court authority for the proposition that he must go over all the evidence or that he can't focus on one bit of evidence. He had the jury listen to the evidence, so anything he might have casually failed to mention or failed to go over completely, the jury heard, nonetheless. Let me ask you a question, Counselor. Yes, sir. Corsia, the holding in Corsia is that the judge cannot go so far as to suggest that the defendant, because he holds his head in his hands or because he's somehow looking down, that that makes him almost usually a liar. They said that that was over the threshold of what the judge could do. However, in this case, it seems a little uneasy to me, and I guess you say there's no Supreme Court precedent, but certainly it seems that a judge can't say that somebody is a liar. That's over the threshold. But in this particular case, the judge took the evidence and circumscribed the evidence he wanted the jury to look at, put it narrowly so that he could make sure that the jury was looking at the testimony of the defendant as relates to that defendant, and said, look at the contrasting, look at the inconsistencies and the consistencies of this evidence in trying to decide who you should believe, given your questions. I mean, that's in fact what he said to them. And then he not only suggests that, but he actually puts them on the evidence he wants them to deal with. Now, how far is that from saying when you put your hand in your head and your hands, you have automatically most likely you're the liar? First of all, I have to disagree with your recital of Curcia. First, Curcia is a supervisory opinion. It does not address the Constitution. That has been acknowledged even by this court previously. So you could not find that binding on the state court at all. However, in Curcia, even if it were binding, you are mistaken about its holding. The holding was not that a judge cannot say someone is a liar. The holding was you cannot tell them your own evidence, i.e., that whenever someone does that, you said automatically they are a liar. But the judge could, for example, say I don't believe that person. There were two points made in Curcia. One was that the judge had expressed its opinion, and they made clear the judge could do that. The judge can pass on the specific questionnaire and say I don't find him credible. There's nothing wrong with that. The problem was, because that's merely discussing the evidence and giving your interpretation of the evidence, they made crystal clear the problem in Curcia wasn't discussion of the evidence but adding to it, i.e., that in all cases or pretty much all cases, when someone does this, they will be lying. And they gave two examples of you can't give a jury the additional evidence of this is what it means when someone is doing it in all cases. In contrast, the opinion regarding the evidence in this case is perfectly permissible even on supervisory review of a Federal prosecution, much less constitutional review, clearly established constitutional review and unreasonable application of clearly established constitutional review of a State judgment. But in this case we have a bunch of other factors as well. First of all, the jury had come back hung several times by then. Second of all, the judge knew, although he didn't ask, but he knew very specifically what was bothering one of the jurors, and he specifically knew that what her view of the evidence was in a way that I've never seen in another case, because she had written so specifically. I'm sorry. What's the matter? I can't imagine why it's relevant whether the judge subjectively knew. Because there is case law indicating that when he was responding to a particular juror, and he said he was responding to that juror, and what he said was responsive to that juror, because essentially he was saying, here's some evidence you weren't looking at. Then he insisted that she listen to that evidence again, or all of them listened to that evidence again. And now what's particularly bothering me, he misstated the evidence. There is no Supreme Court authority that says that you can't coerce a jury. Yes. And at some point that has independent meaning in the English language, what coercion means. Of course it does. But you know what? Under an independent, ordinary understanding, Allen would have been coercive, and yet it's not. I'm sorry. I don't see why. I think it's a very important point.  a particular person, you know, it simply told them to go back and try again and be open-minded. But here he was telling them what to do. He was directing it at a particular person. He was telling her what to listen to. He was making her listen to it. And he was misstating the evidence as well. Do you agree that it was misstating the evidence? I disagree with you fully. Do you agree that he misstated the evidence? I do not. I do not. I do not agree that there was any evidence misstated. Why not? Because this is something that wasn't in the briefs that I noticed myself when I was rereading it, that he stated Hennix's story completely, but as to Smith's story, he did not state the part that implicated Hennix. Assuming that is true. Is it true? I'm trying to ascertain that it's true first. I can't agree with you that it's true, but even if it's true, even if that is true, a mere failure to focus on certain evidence is not misstating the evidence. And having the jury listen to the evidence, even if you have somehow failed to state it completely, can't amount to misstating it, because you are having them listen to it right after you summarize it. There's case law that says that forcing the jury to re-listen to something that they didn't ask to listen to is a problem. There is case law saying that directing the evidence when you know what a particular person's view is, is a problem. But there is no Supreme Court authority doing so, Your Honor. No. Doesn't Lowenthal really give us to that? Or Lowenthal, sorry. I mean, it seems to me that Lowenthal does outline to some extent the outside edge of what one can do. The continuing validity of the Court's observations are beyond dispute as it relates to Allen. But in contrast, the so-called traditional Allen charge does not speak specifically to minority jurors. Now, we're on habeas review, and when I read the California Court of Appeals decision, we don't see anything in that decision talking about those specific allegations to that one particular juror and how they would have dealt with that. They just talk about generally the Allen charge. I mean, this judge in the Allen charge tried to make a specific point to a certain juror, and then the California Supreme Court or Court of Appeals doesn't say anything about it. And then this judge goes on further to specifically outline the evidence he wants that jury to listen to, and he's accentuating that it has to do with whether it's right or whether it's wrong, consistencies or inconsistencies, and making the only defendant who then gets the conviction the inconsistent person. And you're saying that I can't on Lowenthal and Kershia come up with that kind of approach. I realize we have a wide view, but it seems to me that those cases say to us, and maybe they don't, but I'm trying to suggest that you think about this, at least say to us somebody where we review on a habeas review ought to discuss at least those issues. The problem is first Lowenthal found that whatever was presented was not coercive. Lowenthal did not in any way say what the outer limits would be in coercion. The one thing Lowenthal did was they said, yes, there's a possibility or something potentially coercive when you inquire as to the division. It didn't say when you inadvertently find out. And it didn't say that even if you did deliberately find out, that that actually meets a constitutional test in any way. Lowenthal's ---- The problem is once you know. No. I'm sorry. It isn't. The problem isn't once you know. The problem, because the Court can give instructions which address a concern whether or not the judge knows. So the problem, the subjective knowledge of the Court is flatly irrelevant because it cannot affect yours. But if the Court knows the division, it knows the problem, and then tells the jury expressly what it's supposed to consider or what that juror who's hung up is supposed to consider. Now, never mind that you may disagree with the characterization and picks out selectively parts of the evidence. Then under Lowenthal, and what they say is not coercive, there is a ---- something has got to be coercive. So wouldn't the ---- shouldn't the court of appeals have looked at those facts and said it's unreasonable to say that there was not a direction given to the jury? The court of appeals specifically said we are considering everything. That is omitted from the findings and recommendations, unfortunately. The court said our duty is to consider everything, which means everything was considered, whether they specifically mentioned points or not. And I'll point out, that wasn't the argument in the court of appeal that was made. They addressed every argument he actually raised, and they made the point that we are considering everything, which means including the things he didn't necessarily raise. So you can't assume they didn't just because they didn't mention it. But further, again, merely because something must be coercive, there must be some definition, doesn't mean the Supreme Court has established what it is. And the fact is, you don't know. Lower courts have come up with all sorts of theories. Maybe if you did, maybe you haven't done so. Kagan. How is the standard any different from the Strickland standard, for example, which is applied on habeas all the time? Now, I understand that over time there's been more elucidation of the Strickland standard, but we still don't need, and we know from the Supreme Court cases that we don't need, a situation as to which there is an exact precedent in a Supreme Court case in order to find a Strickland standard. There is a general standard, and we apply it. And here we have a general standard, and we know what it is, and it has meaning in the English language, the word coercion. And that's where we're applying. What is wrong with that? The problem is this isn't standard. This isn't Strickland. In Strickland, there have been many cases in which the Supreme Court has found that there's been a violation of the right. You've never found one where they found a constitutional violation of coercion. You haven't found one. So you can't compare this to that case at all. There are none. They have never found coercion violation of the right. If you look at the standard in Strickland, which is prejudice, you know, you look at just all right. I'm listening. There are a lot of different factual scenarios that result in prejudice. And there are also a lot of different factual scenarios that can result in coercion given what the circumstances. So at what level of generality, you seem to be saying because this particular fact scenario has never been reached by the Supreme Court, it can't be coercive. And yet, surely that can't be the requirement. And that is not what I am arguing. What I am arguing is there is no factual scenario which has been before the Supreme Court, and they have found that it violates a constitutional prohibition on coercion, not one. Therefore, there's nothing for you to compare it to at all. So it's not as though they found several, but they haven't found this pattern. They've never found one. So there's nothing you can say that this pattern compares to. Kagan. I think we understand your position. You have used your time. Thank you. Porter. Good morning. My name is David Porter. I'm an assistant Federal Defender from Sacramento, and I represent the Petitioner and the appellee, Anthony Bernard Smith, Jr. In answer to Judge Berzon's question, Judge Berzon, you are correct. And at page 15 of the findings and recommendations, we have the quote from the trial judge, Judge Verga, where he's summarizing the evidence. And he says, Smith said he and Hynex went inside the house. Smith said that he found Mrs. S. in one of the back bedrooms. Smith said that he had the gun when he was back there with Mrs. Smith, Mrs. S., and Smith said that Mrs. S. gave him a $100 bill. Thereby leaving out Smith's theory of the case, that it was Hynex who was in the back room, and other evidence that was presented at trial, that it was Hynex who was in the back room with Mrs. S. And Quersia, the Supreme Court case that's been discussed, says that while a judge may comment on the evidence, she may not distort, add to it, or assume the role of an advocate. Well, what is the Supreme Court case where there has been a distortion? Is there any where the judge comments in this context? I'm not aware of any. Supreme Court authority on that context. Because the cases don't seem to involve any situation like this. There's general principles. Yes. During the course of a trial, you can comment, but you can't direct. But in this context, I don't know of any. Where, other than the knowledge, the questions asked to the jury or the advice given the jury, those issues seem to have arisen. But here, where there's a direct commentary on the evidence, I don't know of any. I'm not aware of any. I'm not aware of any that have reached the Supreme Court either, Your Honor. But in two Ninth Circuit cases, this issue has come up. In Rodriguez v. Marshall, a 1997 case, and that was before AEDPA didn't apply in that case, but the post-AEDPA case of Powell v. Galazza, which is at 328 Fed 3rd 558, Ninth Circuit case in 2003, both of those cases rely on quercia, indicating that while the Supreme Court hasn't addressed that specific issue, it has, in the words of Wiggins v. Smith, enunciated the governing legal principle. And I think Judge Berzon's remarks about the AEDPA are exactly correct. The coercion is the general principle. It's applied throughout law. It has a meaning in English that judges can and have applied. And the Ninth Circuit's precedent on AEDPA is very clear, as well as the other circuits, that say you can and should look to court of appeal, Federal Circuit court of appeal decisions, as helpful advice to see how those principles have played out. We don't need to. Sotomayor, when was this jury or when was this State court decision in the State court trial? The trial was in 1998, I believe, and the court of appeal decision sometime shortly thereafter. Which is at what point the trial court mentioned in its charge that that particular juror? Was that the charge in which he also gave the comment on the evidence, or was that a different charge? That was the same charge. That was the comment on the evidence charge. And, you know, we keep calling this comment, but this was very, very far from a comment. What Judge Virga did was say, I think this evidence is important, the statements of Smith and Hynex that they gave post-arrest to Detectives Willover and Ware. And not only should you consider that, I'm going to play those tapes back for you. The tape that the jury already heard Smith's tape before, the playback of that. But I'm going to have that played over for you, and I'm going to give you the transcript of those statements. And I want you to read along in these transcripts as the statements are played. And then I want you to take those transcripts back with you into the jury deliberation room. This far exceeds the role of a neutral referee. This is the judge, Hynex. Sotomayor, can you point to me? I mean, I might well agree with you if we were on direct appeal, but we're in a kind of a fuzzy area here. Now, in the State court decision, where would you point me to where they went wrong under AEDPA's standards? Okay. The State court of appeal did not mention the portion of the ---- Where? This is volume one of the excerpts of record, page 12. Excuse me. See, the Court says the Court's comment, we disagree that there was coercion. The Court's comments on the evidence were scrupulously fair, and nothing the Court said could reasonably have been construed as urging a verdict either for or against defendant. This is explained in the findings and recommendations where the Judge Mueller said that the court of appeal did not mention the portion of the first supplemental instruction directed toward juror 10's concerns. So what your ---- Now you're reading from the district court, so. One response is that it wasn't ---- it was unreasonable because it wasn't scrupulously fair. In fact, it was not fair, the comments on the evidence. That is in the evidence. That's correct. It was a distortion of the evidence to summarize it. But then in the state trial court's summary of the evidence, they never mention the fact that the information that the judge gave, the supplemental instruction with the defendant's statements, nowhere reflects juror 10's concern. The note that juror 10 sent to the judge said, I can't vote for guilty because the DNA sample was corrupted and because of the unreliability of Mrs. S.'s statement. And the judge, Judge Virga, says, okay, I'm going to ---- here, let's quote it at page 6 of the red brief, the juror expressed several concerns in the communication. To assist you in your further deliberations and to address the concerns expressed in the communication, I am willing to further instruct you in this case as follows. And then he doesn't instruct on either of those issues. Instead, this is the first supplemental instruction, instead he twice says, it's your duty to reach a verdict, it's your goal to reach a verdict, and why don't you experiment with reverse role-playing by having those on one side of an issue present and argue the other sides? Well, if I'm juror 10, that's tremendously coercive. The judge starts out saying, I'm going to address your concerns, and then doesn't address them at all and says, why don't you reverse role-play? And then there's another deadlock, information of a deadlock, what does the judge do? Again, he doesn't take suggestions from counsel. He says, I'm going to comment on the evidence, and then again, he says something that is not responsive to juror 10's concerns. Well, okay. So in the court of appeals decision, because we're not reviewing, we're not making an independent de novo determination of whether what the trial court did was coercive, is my understanding. If we were, it might have been different. But we're under AEDPA. So if you look in the court of appeals decision, where is it just that this context isn't adequately set forth? Yes. They leave it out. They leave it out completely, the fact that what Judge Virga told the jury after being informed of the deadlocks is not, was not responsive at all to juror 10's concerns. That is where the court, that's one of the places where the court is. So where should that have been addressed? It should have been addressed somewhere. Well, I mean, it seems to me, in light of Early v. Packer and other cases, that it isn't useful for us to focus, as perhaps the district court did, on kind of grading the papers of the court of appeals. The real question is to step back and to say, given everything that did happen, was its conclusion reasonable? Right. You know, aside from this fact that it seems to me that the fact's wrong, because he didn't, in fact, they were unreasonable in one specific respect, which is to say that it was a fair summary of the evidence. But leaving that aside, the rest of it, I, I, it seems that we're simply going to be, we are advised by Early v. Packer not to proceed in that fashion, but rather to move back and to say, given everything that happened, you know, with that regard to exactly how they put their opinion together, was their conclusion right or not right? That's correct. And that's maybe where I'm having problems, focusing on something exactly where they did or didn't say something. That's the problem we have under AEDPA, because it's kind of difficult to say, well, in our view, they should have said this. Yes. Or this should have been argued better to it or to the court, which is exactly what we're not supposed to do. Right. But here is where I think the Court needs to focus on. Where was it unreasonable for the court of appeal to deny the Petitioner's claim, the defendant's claim? To conclude that it wasn't coerced. Sorry? To conclude that this wasn't coerced. That's right. That's right. And on that score, I think that that's not even close. As Judge Smith was talking about, the judge circumscribed the evidence. The judge didn't present a full explanation of what the evidence was. And you have to look at this. I think if you read Judge Bybee's recent decision in David Williams' case, it's very, very important to understand that the judge knew about judge – about Juror 10's concerns. And Juror 10 knew that the judge knew. Okay. But here is the problem in a nutshell. This – you have – we have asked you if there are any – I have asked you, at least. Are there any cases in which there is an attempt by the court to comment on the evidence of which it was found to be coercive? The case that you give to us is not a Supreme Court case and is not – it is not a court of appeals case prior to the court of appeals decision – not a Federal court of appeals, the Ninth Circuit decision prior to the court of appeals decision here. So taking the broad proposition that it's coercive to selectively comment on the evidence and to omit significant parts of the evidence might well be a standard that we could adopt, but is it a standard that was in existence that we can say was unreasonable for the courts of California to say it's – that this wasn't a – this was okay? I believe so, Your Honor. I believe that that principle of coercion, of a defendant being entitled to a noncoerced verdict, is so fundamental. Well, are you arguing that the court shouldn't have commented on the evidence at all? No. I believe it could have commented on the evidence, but not in such a grossly one-sided fashion that did not respond to Juror 10's concerns. Because that's where the coercion comes in. The coercion comes in because this juror knows, Juror 10 knows, I've just told the judge, here are my concerns. DNA, unreliable witness. What is he telling back to me? He says he's going to address my question. Well, he's essentially telling her – what he was telling her, as I understand it, because I had a hard time for a while understanding what the point of all this was, was there's other evidence, other than the DNA evidence, which supports the conclusion that Smith was the guy who did this. And the reason he had to do that is because the co-defendant at trial told a completely different story, which did not, in fact, implicate Smith. So that's what he was saying. Suppose he had just said that. Suppose he had said, you know, in fact, the DNA evidence isn't the only evidence. There's other evidence. I think that would have been completely acceptable. If, you know, then he's not crossing the line into an advocate. If the Court will read, there's page 1797 of the reporter's transcript. This is the closing statement of the prosecutor. And he says, When I stopped just before the break, I was going to go into the statement of this defendant, Mr. Smith, to Detective Willover. Once again, I submit that you look at the same area, what is corroborated and what is not corroborated. Very familiar statement. That was Judge Virga's statement, almost word for word. Well, I want you to look at these statements and see what is consistent and what isn't consistent. The statements, the post-arrest statements of Hynex and Smith were crucial to the prosecutor. were cited in 11, 12 pages of the 27 pages covering his initial closing statement. This was the prosecutor's big gun. You should look at this evidence. And when the jury came back thrice declared deadlocked and the judge says, look at this evidence, not only look at it, but listen to these statements, read the transcript, take the transcript back into the jury room during your deliberations, he was essentially another prosecutor. What – just a technical question. Quersia, you agree that Quersia is not a constitutional decision. Is that a constitutional decision? Quersia, yes. Has it been considered a constitutional decision in any other Supreme Court case or cited as constitutional anywhere along the line? Not that I know of, not by another Supreme Court case, but in Powell v. Galazza, the Ninth Circuit in an ADPA context relied on Quersia. And in Rodriguez v. Marshall, a pre-ADPA case, 1997 case, the Ninth Circuit also relied on Quersia. Now, how can they rely on Quersia if it's simply and solely a matter of supervisory powers? I'm sorry? It has to – has to rely on the Constitution when it's applying habeas law. Are there any further questions of counsel on the prosecutor or anything else? All right. Thank you. Thank you, Your Honor. Okay. That's it. All right. The case is started and is submitted for decision. The Court will take a recess of about 10 minutes to reconstitute itself and conclude the calendar.
judges: Schroeder, Berzon, Smith